Miller, State Tax Collector, *v.* White, Auditor of Public Accounts.

(Division B. March 23, 1931.)

[133 So. 144. No. 29115.]

**J. H. Sumrall,** of Jackson, for appellant.

34

J. A. Lauderdale, Assistant Attorney-General, for appellee.

Ethridge, P. J., delivered the opinion of the court.

W. J. Miller, the state tax collector, filed a bill seeking an injunction against the state auditor, alleging that it was the duty of the state collector to examine the books, accounts, and vouchers of all fiscal officers, and depositories of the state, and of every county, municipality, levee board, and taxing district of every kind, and to sue for, collect, and pay over all money improperly withheld by such fiscal officer; that included in these duties is the

duty of collecting privilege taxes from persons who have failed to pay the privilege tax within the time provided by law; and that for many years, in fact ever since the creation of the office of state revenue agent, who was the predecessor of the state tax collector, it has been the custom of that office to send out agents to investigate and check the public records, and, when they located delinquent privilege taxes in any county, they gave a notice on forms provided by the state tax collector to both the county tax collector and to the delinquent taxpayer of such delinquency and the amount then due, and, unless the same was paid, suit would be brought therefor; that customarily after receiving such notice the money was paid to the county tax collector, and he deducts the commission of the state tax collector, or the state revenue agent prior to the changing of the name, and settles with the auditor of public accounts, showing the deduction of the commission of the revenue agent or state tax collector from the amount collected; that through long years of practice and the construction of departmental offices the state auditor has approved the county tax collector's settlements, deducting, the commission of the revenue agent, and also the commission of the county tax collector, and paying the balance into the state treasury, after such settlement, etc., with the state auditor of public accounts. It was further alleged, however, that recently the present state auditor, conceiving that he had the power and right to judge of such matters, had refused to allow the county tax collectors to deduct the twenty per cent. commission allowed by law for the state tax collector where the county tax collector had also deducted a commission or fee for himself, and that he would not receive a report containing or showing deductions in favor of the state tax collector and the county tax collector for their respective commissions, and threatened to enforce penalties provided by law, which are heavy in their nature, for failure to file a proper re-

port of commissions and pay the proper amount into the state treasury, and that, by reason of such refusal to receive such report and such threats to impose such penalties, the various tax collectors of the state were paying the commissions of the state revenue agent into the state treasury on reports not showing their deductions, and that the effect of such practice is to practically destroy the efficiency of the office of the state tax collector, because the only way, under the law, that he can operate his office is by having the commissions paid to him from the collections so made, and that he cannot operate his office without such commissions, as he has no funds except such commissions with which to pay the officers for their services. He further alleges that, as there are eighty-two tax collectors in the counties of the state of Mississippi, and as each of them is required to make monthly reports to the auditor of public accounts and make settlements with the state treasury within a few days after the first of each month, it is impractical to resort to mandamus to compel the state auditor to receive proper reports, and to compel the county tax collector to make proper reports showing the commissions, and reserving them from the state treasury, and that he has no remedy save in the court of equity by which to protect his rights in the said matters and to compel the auditor to refrain from the practice which he has unlawfully adopted, and prays for an injunction to restrain the auditor from continuing such practice and requirement of the county tax collectors, and to permit them to file reports showing deductions of commissions in proper cases in favor of the state tax collector for such collections as he has made in the manner above indicated. Attached to the bill as an exhibit thereto is a sample or specimen of the reports made out at the instance of the state revenue agent by the county tax collectors of certain privilege tax payments to the sheriff of Hinds coun-

ty, Mississippi, showing the amount of tax collected, the amount of damage collected, and the commission in favor of the state tax collector, and a copy of a letter from the state auditor to the county tax collector refusing to receive such report and demanding a remittance to the auditor in the settlement with the treasurer, or payment to the treasurer of the full amount collected; save alone the commission of the county tax collector.

The auditor appeared through the Attorney-General of the state and demurred to the bill on the following grounds: "1. There is no equity on the face of the bill: (a) Because when privilege tax and penalties thereon are collected as outlined in the original bill, both the State Tax Collector and the County Tax Collector are not legally entitled to commissions on one and the same collection. (b) Because when privilege tax and penalties thereon are collected as outlined in the original bill, the State Tax Collector is not legally entitled to a commission on such collection."

The question of the jurisdiction of the chancery court to entertain the bill and to grant relief in proper cases was not raised in the demurrer, nor by either the complainant or the defendant, but, when the bill and the demurrer was presented to the chancellor for decision, the chancellor held that he had no jurisdiction in the matter and dismissed the bill without passing upon the demurrer or the legal contentions presented by the two state officers, from which decree this appeal is prosecuted.

The question of the right of the state tax collector to the commission involved, and also the right of the county tax collector to a commission for himself, has been decided favorably to the commissions of the state tax collector in the case of Carl C. White, State Auditor, v. W. J. Miller, State Tax Collector, 133 So. 146, and the only question now presented for decision is the jurisdiction of the chancery court to entertain the injunction upon

the facts stated in the bill, and, if the chancery court has jurisdiction, the determination of the truth of the allegations alleged by the complainant. In our opinion it would be wholly impractical and tantamount to no remedy at all, or at least to a very ineffective one, to require individual suits of mandamus to be filed in each monthly settlement by each particular tax collector who had made collections at the instance of the state tax collector. It is a well-known and familiar ground of equity jurisdiction that it will entertain a bill on the sole ground of a multiplicity of suits at law between the parties involving the same issues and questions, in such cases it being deemed to be an inadequate remedy at law and a needless expense and vexation to the parties in separate suits, so long as the conditions announced and principles stated in Tribette v. R. Co., 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, are not violated. In that case it is said: "The jurisdiction of equity to prevent a multiplicity of suits does not extend to enjoining a number of separate actions at law against the same defendant to recover damages, where the plaintiffs have no community of interest, except in the question of law and fact involved, and cannot be proceeded against separately in equity."

We are of the opinion that in the present case the rights of the state tax collector in each settlement presents the same questions, and the right of the state tax collector to his commissions would be involved in each separate suit; that all the contentions and controversies in each case in litigation are rooted in the common source of the state tax collector's right to his commissions, in such cases no possible good could come from maintaining such protracted, excessive, and unnecessary litigation. In each of the cases the state tax collector would trace his rights to the same fountain head, that is, the law of his compensation and the question as to whether

he was entitled to his commission in cases where the money was paid to the county tax collector at his instance and direction, and through the services the state tax collector performed in the discharge of the duties of his office.

The fact that the two officers are each state officers does not relieve the question from the incidents that would follow were they private citizens acting in individual capacities. In Lawrence on Equity Jurisprudence, under the heading, Injuries Inflicted Through Governmental, Official, or Judicial Agency, we find the following statement: ''To an ever-increasing degree the modern state seeks to surround its governmental machinery with safeguards to insure the minimum of injury and the maximum of protection, but there must inevitably remain a considerable field of potential harm from its operation which only the judicial arm of the government may avert or alleviate, and with which a court of equity is particularly well qualified to deal. Every department of organized government—legislative, executive and judicial—is subject to the exercise of this power, though in varying degrees, and subject to important limitations imposed by public policy and constitutional law.'' It is especially so where an officer acting in the name of the government and under its authority conceives that he has the power of decision, which the law does not confer upon him, and undertakes to exercise such unlawful power to the harm of some other officer or person. Equity will not control the discretion of the public officer where the law has conferred discretion; the courts will only compel the officer to take appropriate action, but will not undertake to control his decision on questions left to his discretion and judgment, unless a remedy is given by appeal, or otherwise, for that purpose, but an officer has no right to assume a power, which has not been conferred upon him, to the hurt of another.

As we have held in a former decision, the auditor is not the judge of the rightfulness of all cases of another officer's or person's right. In the same work referred to above, Lawrence's Equity Jurisprudence, at section 964, it is said: "Equally well settled is the doctrine that public office, no matter what its character or rank, confers no immunity from liability for abuse of official powers, and when acting in excess of the authority conferred by law, or abusing authority in matters not entrusted to their discretion, such officials are subject to judicial control, both of courts of law and equity, regardless of their official status." In this state there are some exceptions to the broad statements here contained, but they are not involved in the controversy now before us. The auditor of public accounts having misconceived his powers and duties in the matter, and having misconceived the tax collector's rights to his commissions, which he was given no authority to decide under the law, we think it was within the jurisdiction of the court of equity to prevent a multiplicity of suits, and the detriment to public services, to hear and determine the matter and grant appropriate relief if the facts appearing in the bill are true, as the demurrer confesses them to be.

Therefore we think that the court below was in error in holding that it had no jurisdiction, but, as the court declined to exercise jurisdiction and to pass upon the questions presented, we are powerless here to render judgment granting the injunction, under the cases of Robertson v. Bitulithic Co., 129 Miss. 453, 92 So. 580; Brown v. Sutton (Miss.), 121 So. 835; and St. Louis & S. F. R. Co. v. Bridges, 156 Miss. 206, 125 So. 423. We must reverse the judgment of the chancellor and remand the cause, with directions to pass upon the demurrer and decide the controversy.

Reversed and remanded.